Thank you, Your Honor. Good morning. My name is John Rhodes. I'm in the Missoula Office of the Federal Defenders of Montana. I represent... I am having problems hearing you. If you can speak louder or speak more into the mic or something. I'd like to reserve two minutes for rebuttal. Thank you, Your Honor. In this case, remanding for retrial before the same judge who had already convicted Mr. Wallen and who said he would make examples of defendants who shot grizzly bears, violated due process, lost the right to trial. At the first trial, closing arguments immediately followed the close of evidence. So I didn't have a transcript. All I had was notes and my on-the-fly recall of the evidence presented at trial. At the retrial, we had the transcript. And because there were two levels of appeal from the magistrate to the district court and from the district court to this court, we literally had years to review the transcript. And we filed 24 pages of briefing to the magistrate for the retrial. And the judge, in his own words, reached findings of facts that, quote, are substantially identical. That's an E.R. So Mr. Rowe, just to be clear, I mean, in some respects, the Wallen one court, the panel, the Ninth Circuit panel, you know, you made the argument that you shouldn't send it back to the same judge, but they ruled that they did. So what I mean, we're sort of bound by that, except how is your argument different? Is it because what happened when it went back, you feel like, violates due process? Or I'm just trying to figure out, like, where we're bound by the former panel and where we're not. Yes. First, the former panel didn't even address due process or the Sixth Amendment right to impartial jury. And the judge on remand, which goes to your question, Your Honor, that he had, his fact findings were no different from those in the first bench trial. So we filed 24 pages of briefing and the judge doesn't change a single fact. He sat in judgment of his own verdict and he had made up his mind already. And literally, he had made up his mind already. And the best evidence of that is he had decided that Mr. Wallen, the damn Wallen, was not credible. And in his second opinion, which is nearly identical to the first opinion, and I think that's incredibly telling. He doesn't change a single fact, even though we filed 24 pages of briefing. He said that his determination that Mr. Wallen was not credible was dispositive. Well, so are you, suppose we didn't think that there was a due process violation. Are you also contesting the findings as they exist in the current version, and in particular whether the credibility finding alone is enough? Yes, he said that because I find Mr. Wallen incredible, that's the end of the issue. Not credible. Incredible and not credible are not the same thing. But go ahead. Yes. So the judge literally shifts the burden of proof to Mr. Wallen. And he said that Mr. Wallen's lack of credibility and inconsistent statements demonstrate that Mr. Wallen did not have a good faith belief in shooting the bears being necessary to protect his family. So the judge decided. Presumably it would be pertinent to a good faith. He was not that he didn't tell the truth. They buried his stories. In other words, why would he be covering up if he actually had a good faith finding? So it's not not not relevant. Is it relevant? The credibility finding as an indicia of subjective belief? It's relevant as an indicia. It's not dispositive. But if you read the judge's order, he literally says because Mr. Wallen, I find Mr. Wallen not to be credible in his inconsistent statements. Therefore, he did not act in a good faith belief. He shifts the burden to Mr. Wallen. And he brought that predetermination to the second trial. That's the whole problem. But the underlying issue, especially after the Wallen one ruling, is what did he subjectively believe? And in some sense, the best evidence of that is, you know, what he says and what the trier of facts evaluation of that is. And so when the trier looks at that and says, I don't believe this, why isn't that an adequate basis on which to rest a finding of beyond a reasonable doubt? The judge doesn't acknowledge in his analysis any of the eyewitness testimony that night in every single person. Both of Mr. Wallen's neighbors, both of his family members all testified to Mr. Wallen's fear for himself and for his family. And with respect to that particular point, Your Honor, about Mr. Wallen that night, that's what Judge Christensen said. He said that Mr. Wallen's statement on the night of the incident were likely the most reliable. But then he mistakenly says that Mr. Wallen never mentioned fearing for his safety or for the safety of his family until two days later. But the Fish, Wildlife and Parks agent, Mr. Bardos, Chuck Barthels testified that that night, Mr. Wallen said he was afraid. And he said he was afraid for his children and the neighbors and that he stated he was trying to scare the bear away from his family and the chickens. And he specifically said, Mr. Bardos, that Mr. Wallen was rattled. Judge Lynch just ignores all of that because he had already decided that Mr. Wallen was not credible. That's Rose. Can I can I ask you? So you also ask in your briefing that this go back to it. It does not go back if we were to send it back for a third time to magistrate Judge Lynch, but magistrate Judge Lynch is retired. Right. So is that that's essentially mooted. Right. So what is your position now? I just I know your position is that it shouldn't go back at all. And but assuming that it was to go back, what would your position be? At the least, Mr. Wallen deserves another trial. We believe it has to be before a jury, because even if it's assigned to the new magistrate who replaced Judge Lynch, she's going to know the procedural history. And that's the problem. And one thing I want to say about Judge Lynch, and we briefed this, he made it very clear in another grizzly bear case how upset he was about people shooting grizzly bears in Montana. And he twice used the phrase in the Katzer case. And this is briefed to page 19 and 20, our reply brief that Mr. Katzer was going to be the first example. Those are telling words. Mr. Rhodes, can I ask you? So I get that. I mean, it seems like it's just a mood issue. All this. I'm familiar with it because it's in the briefs. But I'm Mr. Magistrate Lynch is not going to be there if this goes back. So but I assume that it would be under Judge Christensen. Do you have any concerns with, you know, Judge Christensen didn't make those kind of comments about bears and such. So is there a concern with this going back to Judge Christensen? I'm concerned about any trier fact knowing the procedural history, but in terms of assigning it to a different judge, we wouldn't have the concerns that were that are on the record from Judge Lynch, who made it clear he was making first example. You don't use the word first unless there's going to be a second. There wasn't. May I ask you the ultimate. There's a district court opinion here as well. And I don't know why we're not looking at it with regard to whether there was an analysis of other facts. And it seems to me that there was, or at least arguably there was. The district court said that, first of all, as I was suggesting before, that a rational fact finder could make a reasonable inference from the lack of proof of this as to material facts. Whether he had a good faith belief. And second of all, he says that there was other evidence. The statements show that he shot at the bears to protect his remaining chickens or to scare the bears from his property. And that's his closest state of mind. He didn't mention fear for his safety or the safety of his family until two days after the incident. He made material omissions in his first interview, and his subsequent alteration of the material details demonstrate his willingness to be disingenuous. A rational fact could have found that he proved beyond a reasonable doubt that he didn't have the requisite subjective good faith belief. Why isn't that enough? In other words, if one draws the inference from what he did say at various times, that he was actually trying to protect his chickens or scare the bears from his property, then that goes to what he thought he was doing. Why isn't that adequate on the record? First, Your Honor, going to the due process impartial... I don't want to talk about due process now. I want to talk about whether the findings by the district judge, which are ultimately findings by the district judge, are sufficient to support under the earlier Ninth Circuit cases standard. Two response...backed responses. First, every single witness that night said Mr. Barda or Mr. Wallum was afraid for himself and his family. But the question is whether there was sufficient evidence. This finding relies on other facts of what he said at different times and concludes that he was actually trying to protect the chickens or scare the bears away. And unless that is unsupported by the evidence, then it's not simply based on a credibility finding. And it's not supported by the evidence. Judge Christensen's analysis that I think you're referencing is at ER 38 and 39. And Judge Christensen writes, Wallum did not mention fearing for his safety or for the safety of his family until two days later. In other words, this was all about chickens, not about himself or his family. But the FWP investigator testified that that night, Mr. Wallum said he was afraid for himself. He said he was afraid for his children, and he was trying to scare the bear away from the family. And that's at ER 223, ER 230, ER 238. And Mr. Barda said Mr. Wallum was without a doubt rattled. That's at ER 231. So that factual basis is clearly wrong. I see I'm past my time, so I hopefully will... Okay, thank you very much. Thank you. Give you a minute, everybody. Thank you. Good morning, Your Honor. Hey, Mr. Johnson. Mr. Johnson, okay. Question. Let's say I shoot a grizzly bear, all right? And I claim self-defense. How not credible do I need to be for you to meet your burden of proof beyond a reasonable doubt to overcome my self-defense? How not credible? Let's just only talking about that. So I think we would look to this case, the facts surrounding this case, and I think it gets... I'm having trouble hearing you as well. Perhaps you can get a little closer. I think we need to look in this case, Your Honor, to the point that Judge Berzon... Mr. Johnson, I'm trying to figure out... This is a theoretical question. Yeah. Because I know the answer to this theoretical question. I want to know if you know the answer to this theoretical question, which is how not credible do I need to be in order for you to meet your burden of proof to prove beyond a reasonable doubt that I'd engage in self-defense? And so since you're having trouble with that, let me give you a little bit of a hypo here. Let's assume for a second that I am the biggest liar that has ever been. In fact, I've made Time Magazine's Liar of the Year cover. Are you following the hypothetical? Yes. All right. And I tell you that I shot a grizzly bear in self-defense. And if it's true that you can meet your burden, then what if I add one fact to that, and that was the grizzly bear was chewing on my leg. Right? I only add that fact. My lack of credibility, the fact that I'm the biggest liar in the world, makes zero difference. We would all agree that not only did I have an objective basis, but I probably, unless I just happen to have a super high pain tolerance, had a subjective basis for self-defense also. So this is my problem. If you go and you read Judge Lynch's decision, he clearly says – Mr. Rhodes is right. He clearly says that he is finding that you met your burden beyond a reasonable doubt purely and strictly based on the lack of credibility of Mr. Wallen. And I'll ask you in a second to show me something else in that decision. And then when you go to Judge Lynch's, to what Judge Berzon said earlier, when you go to Judge Christensen's district court review, Judge Christensen, he actually goes further. He says, when I look at the three factors that the Wallen court gave me, those all cut in favor of Mr. Wallen. He had good reasons for all of this, and so basically he would meet the reasonable standard, which is odd because he found differently in the first case, but whatever. And then he says, but he's not credible. So the credibility finding was so strong, the lack of credibility, that it overcame all of the evidence. And I'm having trouble seeing how you meet your standard based purely on somebody being not credible when ultimately I agree that it's relevant, but it's not – I think Mr. Rhodes said it very well. It can't be dispositive. You cannot prove your case on self-defense unless it's – basically the district court made a fair – or the finer fact here was acted rationally to make an inference from the fact that the defendant was telling a different story at trial. And that inference was that he really didn't have a good faith belief when he in fact shot Baird. Now, the second way credibility affects this case is, as the district court found at page 18, as I mentioned, was that it colors the court's review of the record to assess his claimed self-defense. And in that – Mr. Johnson, let's talk about page 18 because in page 18 the court actually says – so it seems to me like when I read – and I read very carefully Judge Christensen's decision here. And he says, listen, when I apply the three factors, they all cut in favor of Mr. Wallin. But Lynch found that he wasn't credible, and I think that overcomes. And then he goes on and he says on page 18, the court finds it significant that Wallin did not mention fearing for the safety of his family or himself on the night of the incident. Now, I want you to turn to page 14 of your answering brief. And you say – I mean, you don't. I don't think you wrote this, but your attorney did. The district court acknowledged the defendant may make false statements to law enforcement for a number of reasons. However, his lack of truthfulness coupled with the significant fact that Wallin never mentioned fearing for his family or his safety on the night of the incident. Okay, and now if you go to excerpts of records page 223, right, 223, Bartos said at the trial with your attorney, the same attorney that was actually – wrote this brief. Just a second. He says he just – he never said they're aggressive. He just said he was afraid of them. And then if you go to 230, he says he was afraid of them. He said that they were – he was afraid for his children. He says he was rattled. He says he was shooken up. He says he was scared. All those things Mr. Bartos said. So that's just a pure false statement in your brief that misled Judge Christensen. And so to Judge Berzon's question that she asked Mr. Rhodes earlier, how can we trust that Judge Christensen – I mean he was misled by your brief. Yeah, well, so what I think is fair, and you're right, the defendant stated early on to Bartos that he had some fear for his family. I mean that is in the record. That's clear. And Judge Christensen was clearly aware of that. The point here – No, no, no. He's not clearly aware. He said he didn't do that. Well, so the point is that the court used the credibility determination as a filter to look at the record. And the court said, look, I can't believe what the defendant said in that trial. I have to go and look at what he said at the time of the incident. I have to rely on what he told Bartos. And if you look at Bartos – Okay, Mr. Johnson, he said this stuff.  Thank you. So what the court stated there was that after it looked at the statements more contemporaneous with the incident, which it found to be more reliable and which we think was a rational conclusion, the court – and this is the district court – concluded that those statements show that he shot the bears to protect his remaining chickens or to scare the bears away from his property. Now, that's significant because it's largely corroborated by the other evidence that was at that time that the defendants gave and that was present, particularly that the bear was in the chicken coop when he first shot it, that it was walking away when he shot it the second time. Now, that's the third bear, but those two shots that he fired at the second bear were clearly not while a bear was charging. And the magistrate found here at page 56 of the record that the necropsy that was conducted later confirmed that version of the event. Yeah. Judge Van Dyke, do you have another question? Yes. So you're saying all of this, but if you actually go to the record and you look at what Judge Lynch said, what he says is, I just didn't find him credible, and he says that is why. He's ruling, if you look on page, on excerpts of record, it says the court excerpts of record 59, his entire rationale, Judge Lynch's entire rationale is, I find the inconsistency severely undermine his credibility. And then he goes on to say, for the reasons set forth above, which are all the credibility issues, I conclude that his lack of credibility and inconsistent statements demonstrate that he did not in good faith believe that shooting the bears was necessary to protect himself or his family. And so you've got this, you're saying, well, you know, he shot to protect his chickens, et cetera, but that is all based on the idea that he also was not scared, right? Because that's exactly what Judge Christensen said. He said, it's very telling to me that he never said he was scared, but he did. Your Honor, I have to push back on this fear issue, okay? It is, as the district court stated in its opinion, it's not the issue. The issue is whether he needed to shoot the bear to protect himself from bodily harm. And the point about credibility is, if we view the facts through the lens of the magistrate's credibility determination, those facts corroborate the conclusion that the defendant was not in danger of physical harm from this bear at the time he shot. Those facts show that he was scared. Mr. Johnson, it doesn't matter. That's an objective standard. What matters is whether, we know that from all I want, it matters whether he was scared. And you just said the district court did not think it was important, this fear issue. But that's exactly wrong, because on page 18 of the excerpts of record, the court himself said, I find it significant that Wallin did not mention fearing for the safety of his family or himself on the night of the incident. The court said that because you told him that in your brief. And what you told him was false. Well, it was not correct. You're right, Your Honor. That is true. That was not correct, but the court did conclude later in the opinion that the issue was not fear, because he assumed that the defendant would be fearful in this circumstance. The issue was whether or not the defendant had a good faith belief that he needed to shoot the bear. Mr. Johnson, that's not true. It's just not true. What he did, what Mr. Lynch did, is he said, he goes through all of the objective stuff, and he says, on page 18, he says, before he says this statement, he says, as the record clearly reflects, he was reasonably fearful. So I think the judge is saying he could have been fearful. It makes sense, because those three factors that the Wallin I court said. But then he goes on and says, but he wasn't fearful, because he didn't say he was fearful on the night. But that's just a false fact. Fearfulness itself is not determinative of anything. And that's what the district court found, and that was correct. And that is what you need to take from the Quebec case, because in that case, the bear approached the defendant and his moose within 25 yards. And he said he was terrified, and yet he changed his story at trial. And the court there said, look, he's not credible as to his statements of self-defense. Now, I understand in that case, the court didn't discuss the subjective good faith test that we have here. But there is a need for an honest and sincere good faith belief in any event, no matter what test you apply. I have a question about this notion that being scared isn't enough. In this context, we have a grizzly bear. Grizzly bears kill people. If you're 15 feet from a grizzly bear, and you've tried twice to get rid of the grizzly bear peacefully, and the grizzly bear is right in front of you and it's not going anywhere, and you're scared of it, but your position is that that's not enough to support self-defense. He has to be charging you. Is that it? So our position is that the 15 feet story that he told at trial would probably have been enough to prevail in this case. But that's not the story that the court credited, because it had changed so much. The story that the court credited was that he was standing next to his pickup, and he picked up the rifle from the toolbox in his pickup and fired at the bear from the relative safety being next to his pickup. And we know that was relative safety, because on two prior occasions that morning or that afternoon, he had hazed the bears away from his house with the pickup. So he was clearly in a position where he had known from earlier experience that he could move the bears with the pickup, and yet he chose on the third occasion to haze the bears with his rifle, a .22 caliber rifle, which is significant here as well because it's such a light caliber. He didn't expect to kill the bears, and that's reasonable. Can I ask a question about what's the role of clear error versus sufficiency in this case? To what extent does our ability to review for clear error extend to the findings in this case? Well, so I think the credibility determination is determinative because it basically— Do we review the ultimate question of whether he had a good faith, subjective belief? Do we review that for clear error, or do we review that under Jackson's sufficiency? So I think the good faith belief is viewed under sufficiency, but the credibility determination itself is given the highest amount of deference, obviously. Wait a minute. Why is it sufficiency rather than clear error when it was a bench trial? I would have to look at what the standards are, but I think that— I think the appropriate standard of review is that the findings should be viewed for clear error. I mean, they're all bound up in the subjective determination of the court's assessment of his good faith belief, and the credibility determination is central to that because— But clear error gives us more of a role, not less of a role, than sufficiency, right? Well, it could. Because it's not simply a question of whether there was some evidence, but whether essentially we're convinced that it was a mistake. It was wrong, and that's essentially what the defendants are arguing in their briefs anyway, is that they just simply don't think that the court could have made the findings that it did, and that is—I mean, there was more than sufficient evidence to corroborate the court's conclusion that the defendants— But we know that there was clear error as to one fact, one important fact. That is what he said directly after the incident. Yes. I mean, we've all agreed that there was clear error as to that, as I understand it. Yes. The defendant did state that he had fear at that time and his family—because his family was in the yard. However, I should note for the record that at the time of the shooting, and this is clear from testimony at trial from his daughter and other things, that the family wasn't out playing at the time that the first shot was taken. They were gathered sort of in the basketball area by the back steps, and eventually by the time he shot the third bear, the family was inside. So the circumstances of that— So I think the daughter did see the interaction with the third bear. The question I've got about this— From inside the house, yes. Right. And she testified that she was scared for her dad, et cetera. But the question I've got—so there's an interplay here to the standard review between— There's a pretty massive—as I've discussed with you, there's a pretty massive glaring fact, and it seems like the district court judge relied very heavily on that. He himself said it was— I just don't think it's as massive as you think. But the question I've got for you is it doesn't seem to me like this is a factual issue here. It's a legal issue. It's that the district court judge thought— When you were up here before at the Wallen One Court, you said, we think it should be an objective standard, not a subjective standard. The court disagreed with you, said it should be a subjective standard. Your backup argument was, well, it doesn't matter. Even if it's a subjective standard, you can send this back because if you send it back— You don't need to send this back because if you send it back, Judge Lynch has already said that he's not credible. And since he's not credible, he doesn't—we're going to win on the subjective standard anyway. And the court—and it was harmless error. And the court rejected that. The court rejected your argument and rejected your argument because it's not enough, to go back to what I said at the beginning, it's not enough to simply say that somebody's not credible. It's not enough. Even Judge Christensen didn't think it was enough. He thought he needed to add to it the fact that he never said he was scared on the night when this happened. So it's not—so that's—so how do we review that legal error of thinking that credibility alone is enough, lack of credibility, to meet your standard? I think we review that de novo, don't we? You know, that is not a question at issue here. There is—the credibility determination colored the court's view of the facts. You review the court's finding of facts. You're not reviewing a legal error as to the application. The proper standard was applied here. And the court in Wallen 1 said, you know, we argued for a harmless error. We made that argument. But the court said, well, look, the defendant should have a chance to clarify his views. The defendant should have a chance to basically further expound. And he chose not to add any evidence to the record in this case. So the proper standard was applied, and there was no legal error. And the defendant here is not arguing that there was legal error. Now, I see— Can I indulge one last question that relates to the—that relates to something different? So if this case was to go back and you were to have another trial, Mr. John, I realize that you probably don't have to send it back to somebody different. I think under Wallen 1, they don't get a jury trial as of right. But it is like a really massive optics here. I mean, the district court made a pretty egregious factual—acting in the factual capacity. The district court made a pretty egregious factual error, misled by your office, and seemed to have decided based on that. And it seems to me it was very difficult for Judge Lynch—and I know he won't be on this case anymore— but to put aside his prior rulings. Do you ever—if this was to go back, does your office ever say, you know, we don't have to provide a jury trial, but it would be better for the appearance of justice to do that? Do you ever do that? Or do you only provide jury trials when you have to? Or do you only ask for a jury trial when you have to? Your Honor, I don't know if I can even answer that question. It would depend on the circumstances. And it's above my pay grade. You know, in this— Do you have a trial hearing? Is your answer you don't know? I don't know. All right. Thank you very much. Thank you for your argument. Mr. Rose, since Mr. Johnston went well over his time, we'll give you three minutes to rebuttal. Thank you, Your Honor. The government used the word that the credibility determination colored the judge's decision. The judge said because he found Mr. Wallen not to be credible, Mr. Wallen didn't act in good faith belief. He didn't even put the burden on the government. So this wasn't a question of coloring. This was a question of I've made up my mind. He's guilty. Can I ask you the same question I asked your opposing counsel, which is what is the relationship of clear error, review, insufficiency, and what issues are you asking us to review for clear error and which do you consider review for insufficiency? I think in this instance, because it's a bench trial, they merge. So if there's clear error, there is insufficient evidence. So the ultimate question of whether he had the subjective good faith belief, do we review that for clear error or insufficiency? Yes, because of the merged review here, because it's a bench trial. I would say they're reviewed for clear error. Which then results in insufficient evidence because it's just illogical and irrational for the fact finder to find guilt when there's clear error in the fact finding. With respect. I have a question. Did I gather. Did you agree to the proceeding procedure? The first on the first remand of not having a separate trial and for deciding it on. I understand that you wanted to have a hearing and so on. But did you agree to not put on another evidentiary record? Yes. We wanted a different fact finder. That obviously wasn't going to happen. So. All right. Well, this time around, were there to be a remand? Would it be on this current record or would there be another trial on your view? We would have to have a different fact finder. I believe just the practical aspects. Since Judge Lynch is retired. It's not at all unusual for us to remand to the same fact finder, especially when we don't have Judge Lynch here. We just have the district judge to review a fact finding. It's not like every time some judge makes a fact finding error, he's off the case. We don't do that generally. We would ask for a trial before the new fact finder. And what this court didn't have when it issued Walden 1 was Judge Lynch's comments in the other case, which were extremely strong comments. Again, first example. There's not a first example unless there's a second example. But Judge Lynch isn't here anymore. And Judge Christensen, it seems to me, made his own assessment of the paper record. And he made a factual error. And you say they put too much emphasis on the negative credibility finding. But I don't understand why Judge Christensen is to be saddled with whatever Judge Lynch said or didn't say. We would want a new trial, Your Honor, so that whoever the fact finder... I want it, but I want to know why you're entitled to it. Because we should have a fact finder who can judge Mr. Walden's credibility for themselves. So you're saying that the fact finder, that Judge Christensen didn't see Mr. Walden. That's a huge part of it. And also a fact finder who's got an open mind, which presumably a new fact finder would. One point I want to make is the government brought up the third bear and the necropsy. We don't know if the third bear is the bear that was lying in the driveway. These bears, and I'm going to go to the factual circumstances. I think that's very important. I think the government somewhat misled the court by referencing the Quebec case. What happened was bears came the morning before all this, busted through the chicken coop. Mr. Walden repaired the chicken coop. You're out of time. And it would help me if you just... I know the facts. In one sentence, what is the relevance of this? The relevance is the government referenced the Quebec case. Mr. Quebec was out hunting. He hunted a grizzly bear. These grizzly bears came five times. I want to know what difference it makes if it's the third bear or the first bear. We don't know which bear it was. I know. What difference does it make? Because the government's trying to say that the third bear, the bear that was in the driveway, that ultimately was killed on the spot, was the third bear. And that bear appeared to be a shot. Whatever bear it was, he was shot in the back, in his legs. Whatever bear it was, he was shot twice, as I understand it, in such a position that it appears he was walking away, not towards him. What difference does it make what bear it was? Because the bears were darting, dashing around, chasing chickens. Chaos was one of the words used. So in that instance, when someone's trying to defend their family, acting out of fear, it's not like the bear was running away, and that means the bear was shot in the rear. The bear could have been shot where it was because it was dashing, darting. There was chaos. There was chickens in the yard, which had gathered around Mr. Wallen in some sort of protective capacity. Your time is up. Thank you very much. Thank you both for your education in bears. The United States v. Wallen case is submitted. The next case, Rodriguez v. ACCC. Insurance is submitted under Briggs, and we'll go to Schroeder v. Harris.
judges: Berzon, Collins, Vandyke